# Court of Appeals
## Tenth Appellate District of Texas

10-25-00227-CR

Tacoby Davis,
Appellant

v.

The State of Texas,
Appellee

On appeal from the
12th District Court of Walker County, Texas
Judge David W. Moorman, presiding
Trial Court Cause No. 29998

**Argued April 1, 2026**

CHIEF JUSTICE JOHNSON delivered the opinion of the Court.

## MEMORANDUM OPINION

Tacoby Davis was found guilty by a jury of the first-degree felony offense of aggravated sexual assault of a child. The trial court assessed his punishment at fifty years' confinement in the Texas Department of Criminal Justice and sentenced him accordingly. Davis now appeals. In one issue, Davis

contends that his right to a public trial as guaranteed under the Sixth Amendment of the United States Constitution was violated.  We affirm.

## A. Background

After a jury was selected, but before testimony began, Davis informed the State and the trial court that if there was a punishment phase, he intended to call several of his family members as witnesses during that phase.  Davis indicated that the potential punishment-phase witnesses wanted to be present in the courtroom to observe the guilt phase of the trial.  The State objected to the potential punishment-phase witnesses hearing the testimony of the guilt-phase witnesses.  The State argued that Rule 614 of the Texas Rules of Evidence (the Rule) barred punishment-phase witnesses from attending the guilt phase because the Rule applied to both phases.  *See* TEX. R. EVID. 614.  The trial court ultimately agreed with the State's position and indicated that if the Rule was invoked, all witnesses would be sequestered for the entire trial.  Davis pointed out that his family members were not designated as witnesses by the State and were not going to testify in the guilt phase.  Davis narrowed his argument to a single issue: whether the trial court may properly invoke the Rule to exclude family member witnesses from the guilt phase of the trial when those witnesses will have no part in the guilt phase other than observing.  Davis added that, because the punishment phase was to the court rather than

to the jury, there was less of a chance of harm to the State.  Davis objected that excluding his punishment-phase witness from the guilt phase violated his right to a public trial.  After the trial court's ruling, Davis decided not to call most of the family members he initially identified as potential witnesses, and only Davis's aunt was sworn as a punishment-phase witness.  Because the Rule had been invoked, the trial court did not permit Davis's aunt to remain in the courtroom.

## B. Issue

Davis contends that his right to a public trial as guaranteed under the Sixth Amendment of the United States Constitution was violated.

### 1. Standard of Review

Deciding if an accused's right to a public trial was violated is a mixed question of law and fact that does not depend on witness credibility or demeanor.  *Williams*, 664 S.W.3d at 273.  When conducting this review, an appellate court must first defer to the trial court's findings of fact, provided those findings are supported by the record.  *Id.*  The court must next resolve the following questions applying *de novo* review: (1) whether the accused satisfied his burden of demonstrating, based on the totality of the evidence, that his trial was closed to the public; and (2) the ultimate legal issue of whether this closure violated his right to a public trial.  *Id.*

2. Authority

"A public trial is a trial which is open to the general public at all times." *Williams v. State*, 664 S.W.3d 266, 273 (Tex. Crim. App. 2022) (quoting *People v. Woodward*, 4 Cal. 4th 376, 14 Cal. Rptr. 2d 434, 841 P.2d 954, 956 (1992)) (internal quotation marks omitted). "It is one that is not secret; it is one that the public is free to attend." *Williams*, 664 S.W.3d at 273 (quoting *People v. Jones*, 464 P.3d 735, 740 (Colo. 2020)) (internal quotation marks omitted).

The purpose underlying the right to a public trial is for the benefit of the accused, so that the public may see that the accused is dealt with fairly and not unjustly condemned. *Williams*, 664 S.W.3d at 273; *Waller v. Georgia*, 467 U.S. 39, 46, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). Furthermore, the presence of interested spectators may keep the accused triers aware of their responsibility and importance of their functions. *Id.* Additionally, a public trial encourages witnesses to come forward and discourages perjury. *Id*; *Waller* at 45, 104 S.Ct. 2210.

However, "[t]he right to a public trial is not absolute and may be outweighed by other competing rights or interests, such as interests in security, preventing disclosure of non-public information, or ensuring that a

defendant receives a fair trial." *Williams*, 664 S.W.3d at 273 (quoting *Lilly v. State*, 365 S.W.3d 321, 328 (Tex. Crim. App. 2012)) (internal quotation marks omitted). Circumstances when the right to a public trial will be outweighed will be rare, and special care must be used in balancing such interests. *Williams*, 664 S.W.3d at 273; *Waller*, 467 U.S. at 45, 104 S.Ct. 2210. A violation of the right to a public trial is structural error not subject to harmlessness review. *Williams*, 664 S.W.3d at 274. Only an overriding interest, based on findings that closure is essential to preserve higher values that are narrowly tailored to serve that interest, may overcome the general presumption of openness. *See id.* The overriding interest should be articulated by the court ordering closure along with findings specific enough that the reviewing court can determine whether the closure order was properly entered. *See id.* The four-factor analysis for determining whether a courtroom closure violates an accused's Sixth Amendment public-trial right requires that (1) the party seeking to close the trial must advance an overriding interest that is likely to be prejudiced, (2) the closure must be no broader than necessary to protect that interest, (3) the trial court must consider reasonable alternatives to closing the proceeding, and (4) it must make findings adequate to support the closure. *See id.*

The accused bears the initial burden to show that his trial was closed to the public, and if he fails to carry that burden, the analysis is concluded. *See Williams*, 664 S.W.3d at 274 (quoting *Cameron v. State*, 490 S.W.3d 57, 69 (Tex. Crim. App. 2014), on reh'g (Mar. 2, 2016). If the accused succeeds in making such a showing, then we must proceed to determine whether the closure was proper under the four factors from *Waller*. *See Williams*, 664 S.W.3d at 274–75 (citing *Cameron*, 490 S.W.3d at 68).

Courtroom closures fall into two categories, a complete closure occurs when the public is barred from court proceedings and a partial closure occurs when a courtroom remains open to some members of the public but is closed to others. *See Williams*, 664 S.W.3d at 275. Whether a closure is total or partial depends on who is excluded rather than the duration of the exclusion. *See id.* Accordingly, a total closure requires the absolute exclusion of all members of the public from court proceedings for a given duration, and a partial closure occurs when access to court proceedings is restricted for only specific people while remaining open to other members of the public. *See id.*

The Sixth Amendment's secrecy and fairness concerns that accompany a total closure are not the same in a partial closure because of the presence of a remaining audience to ensure the fairness of the proceedings. *See id.* Thus, a partial closure does not warrant such a rigorous level of scrutiny as applied to

total closures and results in the application of a modified *Waller* standard, requiring only a "substantial reason" rather than an "overriding interest" to justify the partial exclusion closure. *See id.* Under the modified *Waller* standard for partial closures, the trial court must find that (1) a "substantial reason" for the closure is likely to be prejudiced if no closure occurs, (2) the closure was no broader than necessary; (3) the trial court considered reasonable alternatives to closure; and (4) the record contains factual findings adequate to support the closure. *See id.* at 276.

3. Analysis

Applying the two-step test that looks to whether the trial was, in fact, closed to the public, we look at the circumstances of the alleged closure. *See Id.* at 274. The courtroom remained open to the public during Davis's trial, and he does not complain about the exclusion of any of the other witnesses or people besides his aunt. With regard to Davis's aunt, it is undisputed that she was excluded from the courtroom during witness testimony, and the State did not and does not challenge the fact she was excluded. Because access to the courtroom was restricted for only Davis's aunt while it remained open to members of the public, we conclude that the courtroom was subject to a partial closure.

*Waller* Factor One

Under the modified *Waller* test for partial closures, first we must find that a substantial interest, as opposed to an overriding interest, for the closure is likely to be prejudiced if no closure occurs. *Id.* at 275. The reason the trial court excluded the witness was because the State invoked the Rule. The Rule provides for the sequestration of a witness from the courtroom so they cannot listen to the testimony of other witnesses. TEX. R. EVID. 614; *Harris v. State*, 122 S.W.3d 871, 882 (Tex. App.—Fort Worth 2003, pet. ref'd). Trial courts have "broad power to sequester witnesses before, during, and after their testimony." *Geders v. United States*, 425 U.S. 80, 87, 96 S. Ct. 1330, 1335, 47 L. Ed. 2d 592 (1976). The purpose of the Rule is to prevent the testimony of one witness from influencing the testimony of another. *See Russell v. State*, 155 S.W.3d 176, 180 (Tex. Crim. App. 2005). Additionally, it enhances the jury's ability to detect falsehoods by exposing inconsistencies in testimony and prevents corroboration and contradiction of the witnesses' testimony. *White v. State*, 958 S.W.2d 460, 462 (Tex. App.—Waco 1997, no pet.) (discussing the Rule when found at Rule 613 of the Texas Rules of Criminal Evidence). Thereby, the Rule serves one of the basic functions of a trial, which is to seek the truth. *Hicks v. State*, 718 S.W.3d 554, 559 (Tex. App.—Houston [14th Dist.] 2025, pet. ref'd); *Leday v. State*, 983 S.W.2d 713, 724 (Tex. Crim. App. 1998). Here, the punishment testimony of Davis's aunt could have been influenced by

hearing testimony regarding Davis's acts unknown to her relating to the charged offense or properly admitted extraneous acts by Davis. Such testimony would potentially impact the State's cross-examination of Davis's aunt regarding what she knew of Davis's past behavior if she testified positively about his past behavior. We conclude that the substantial interest in preserving the truth-seeking function of the trial was likely to be prejudiced if the partial closure had not occurred.

*Waller* Factor Two

Second, we must find that the closure was no broader than necessary. *Williams*, 664 S.W.3d at 276. The Rule has no application to the exclusion of witnesses during voir dire of jurors and before any trial testimony has begun. *See Walker v. State*, 461 S.W.3d 599, 608 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *Coons v. State*, 758 S.W.2d 330, 336 (Tex. App.–Houston [14th Dist.] 1988, pet. ref'd). However, imposition of the Rule is not discretionary during trial testimony, and by the Rule's own terms, the court must order the witnesses excluded at the request of a party or on its own motion. *See Tell v. State*, 908 S.W.2d 535, 541 (Tex. App.—Fort Worth 1995, no pet.) (discussing the Rule when found at Rule 613 of the Texas Rules of Criminal Evidence). The Rule does authorize exceptions for certain witnesses in criminal cases, those witnesses are:

(1) a defendant who is a natural person, the representative of a defendant that is not a natural person, (2) a person whose presence a party shows to be essential to the presentation of the party's case, and (3) a victim if the court does not determine that the victim's testimony would be materially affected by hearing other testimony.

*Russell v. State*, 155 S.W.3d 176, 180 (Tex. Crim. App. 2005) (citing TEX. R. EVID. 614). Only one exception is potentially relevant here. The Rule expressly "does not authorize" the exclusion of a witness who a party has shown to be "essential to presenting the party's claim or defense." TEX. R. EVID. 614. The party seeking an exception under the Rule then has the burden of showing that one of the enumerated exemptions is met. *Tell v. State*, 908 S.W.2d at 541 (citing *Moore*, 882 S.W.2d at 848; *Kelley v. State*, 817 S.W.2d 168, 172 (Tex. App.—Austin 1991, pet. ref'd). It is within the trial court's discretion to decide just when a witness fits under one of the four exceptions to exclusion under the Rule. *Hullaby v. State*, 911 S.W.2d 921, 929 (Tex. App.—Fort Worth 1995, pet. ref'd).

Davis did not contend at trial that the witness's presence was essential to a claim or defense he planned to present. Thus, the trial court did not abuse its discretion in failing to find the witness qualified for an exception from the

Rule or in complying with its non-discretionary duty to exclude the witness. We conclude that the closure was not broader than necessary because of the Rule's balance between Davis's right to a public trial and the truth-seeking goals of sequestration, along with the Rule's limited application of excluding witnesses during trial testimony only.

*Waller* Factor Three

Third, we must find that the trial court considered reasonable alternatives to closure. *Williams*, 664 S.W.3d at 276. The record before us reflects that the trial court considered a reasonable alternative to the closure when the trial judge indicated that a witness's presence during the guilt-innocence phase would disqualify them from testifying in that phase but would not disqualify them from testifying later at the punishment phase. However, the State challenged the trial court's proposed application of the Rule and argued that the Rule required exclusion of all witnesses during trial testimony in either phase. Because the Rule, by its own terms, is not discretionary during trial testimony the trial court required that the witnesses be excluded. *See Tell,* 908 S.W.3d at 541 (discussing the Rule when found at Rule 613 of the Texas Rules of Criminal Evidence).

*Waller* Factor Four

Finally, we must find that the record contains factual findings adequate to support the closure. *Williams*, 664 S.W.3d at 276. The reporter's record before us reflects findings by the trial court that (1) the courtroom was open, (2) anyone, including family, friends, and members of the community, were welcome to watch the trial, and (3) only prospective witnesses' access was restricted. Additionally, because the trial court's sole reason for the closure was based upon the Rule, we will infer that the trial court's reason for sequestering the witness was to prevent the testimony of one witness from influencing the testimony of the other witnesses, to enhance the jury's ability to detect falsehood by exposing inconsistencies in testimony, and to prevent corroboration and contradiction of the witnesses' testimony. *See Russell*, 155 S.W.3d at 180; *White*, 958 S.W.2d at 462 (discussing the Rule when found at Rule 613 of the Texas Rules of Criminal Evidence). And, most importantly, preservation of the basic function of a trial, which is to seek the truth. *Hicks*, 718 S.W.3d at 559; *Leday*, 983 S.W.2d at 724.

This is not a situation in which the State identified spectators as witnesses for no other reason than to have them excluded. There is nothing in the record to indicate that the State invoked the Rule for an improper motive such as removing those spectators considered undesirable. *E.g., Addy v. State*, 849 S.W.2d 425, 429 (Tex. App.—Houston [1st Dist.] 1993, no pet.). Davis

identified the family member as a witness, not the State.  The trial court did not impose an across-the-board closure, and based upon the record before us, the State was not using the Rule to exclude unwanted spectators, only witnesses.  We conclude the record before us contains factual findings adequate to support the partial closure.

C. Conclusion

We affirm the judgment of the trial court.

_____

MATT JOHNSON
Chief Justice

OPINION DELIVERED and FILED:  August 13, 2026

Before Chief Justice Johnson,
   Justice Smith, and
   Justice Harris
Affirmed
Do not Publish
CRPM

